UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE A. C.,[1]<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 2:20-cv-06493-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the case management order, the parties have filed briefs addressing the disputed issues. The matter is now ready for decision.

## BACKGROUND

On December 28, 2015, Plaintiff applied for supplemental security income, alleging disability beginning July 1, 2014. (Administrative Record ["AR"] 353-361). The claim was denied on April 26, 2016. (AR 277-284.) Plaintiff requested

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

reconsideration of the initial determination, and on February 17, 2017, the request was denied. (AR 285-289.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 290-291.) At the hearing on March 22, 2019, Plaintiff (who was represented by counsel) and a vocational expert ("VE") testified. (AR 220-250.)

In a decision dated April 9, 2019, the ALJ found that Plaintiff suffered from the following severe impairments: osteoarthritis right hip; plantar fasciitis, and neuroma status post right foot surgery; chronic obstructive pulmonary disease (COPD); obstructive sleep apnea (OSA); hypertension; and obesity. (AR 192.) After finding that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a light work as defined in 20 C.F.R. § 416.967(b) except she can never climb ladders, ropes, or scaffold; can frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and must avoid even concentrated exposure to pulmonary irritants (e.g., dusts, fumes, odors, gasses, poor ventilation). (AR 193.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff would be able to perform the requirements of the following light unskilled (SVP 2) occupations: (1) general cashier; (2) café attendant; and (3) routing clerk. (AR 197, citing AR 248-250.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 198.)

The Appeals Council denied Plaintiff's request for review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ's Residual Functional Capacity determination is supported by substantial evidence.
2. Whether the ALJ properly evaluated Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial

evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). A court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. The Medical Record

According to the ALJ's findings, Plaintiff suffers from the following severe impairments: (1) osteoarthritis right hip; (2) plantar fasciitis and neuroma status post right foot surgery; (3) chronic obstructive pulmonary disease (COPD); (4) obstructive sleep apnea (OSA); (5) hypertension; and (6) obesity. (*See* AR 192, 373.)

With respect to her COPD, OSA, and hypertension issues, Plaintiff was treated by Syed S. Ahmed, M.D. In February 2015, Plaintiff underwent pulmonary function tests finding "moderate" obstructive airway disease. (AR 550.) A 2016 sleep study determined that Plaintiff suffered from obstructive sleep apnea with hypoxemia. (AR 550, 569.) Plaintiff continued to smoke cigarettes during this period and from 2015 to 2017 failed to complete a recommended CPAP titration study for treatment of OSA. (AR 529, 532, 535.) In July 2016, Plaintiff sought hospitalization for an exacerbation of COPD. Records indicate that she smoked a half a pack of cigarettes a day. She was given IV steroids and nebulizer treatments, put on Levaquin, and

urged to quit smoking. (AR 910, 952-954.) It was reported that she improved "nicely." (AR 910.) In August 2017, Plaintiff presented to the hospital with an exacerbation of COPD. (AR 824-830.) She was treated with albuterol, Atrovent and intravenous Solu-Medrol and prescribed Prednisone and Albuterol. (AR 828, 830.)

Follow-up visits with Dr. Ahmed in September 2016, November 2016, March 2017, and September 2017 reveal that Plaintiff was "pulmonary wise doing fine" and that she denied experiencing significant shortness of breath. (AR 508, 511, 513, 516.) A January 6, 2017 chest x-ray showed "no acute cardiopulmonary abnormality." (AR 455.) Examination of more recent records reveals evidence of chronic cough and occasional wheezing. (AR 1214-1215, 1225.)

Regarding Plaintiff's neck impairment, a September 2014 cervical spine x-ray revealed evidence of cervical degenerative disc disease, prior to the application date. (AR 465, 1302.) An August 2015 x-ray of Plaintiff's pelvis, sacroiliac joints, and lumbosacral spine revealed mild degenerative changes. (AR 461-463.)

In October 2015, Gregg R. Sobeck, M.D., examined Plaintiff in connection with right hip pain and determined she walked with "Trendelenburg gait favoring the right lower extremity." (AR 497.) Plaintiff also had limited flexion and extension, as well as limited internal and external rotation of the hip. Plaintiff's hip x-rays showed signs of "severe osteoarthritis of the right hip." (*Id.*) Dr. Sobeck recommended total hip arthroplasty but also recommended putting off surgery until Plaintiff's smoking and COPD were under control and weight was lost. (*Id.*) Recent medical evidence submitted to the Appeals Council shows Plaintiff's providers requested approval for a total hip replacement in November 2019. *See* ECF 20 at 5, AR 81.

Consulting physician, Helen Rostamloo, M.D., conducted a comprehensive physical examination of Plaintiff in April 2016. (AR 502.) An April 2016 x-ray of Plaintiff's right hip showed "mild to moderate degenerative disease." (AR 507.) Plaintiff exhibited normal gait and balance, and Dr. Rostamloo stated that she did not require the use of assistive devices for ambulation. (AR 503.) Examination of

Plaintiff's back revealed no vertebral, paravertebral, or costoverbral angle tenderness; no evidence of muscle spasms; and no limitation in range of motion. (AR 504.) Plaintiff's range of motion in her left hip was within grossly limits while her right hip demonstrated forward flexion of 80 degrees with pain. (AR 504.) Dr. Rostamloo opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, as well as push and pull on a frequent basis. (AR 505.)

In June 2016, Plaintiff visited a podiatrist for left foot/heel pain and was diagnosed with plantar fasciitis and neuroma. (AR 522.) A May 2016 x-ray of Plaintiff's left ankle was "unremarkable" besides showing signs of edema. (AR 460.) A June 2016 x-ray of Plaintiff's toes was also unremarkable indicating no fracture, subluxation or dislocation. (AR 459.)

Complaining of pain and swelling in her feet, Plaintiff was examined by podiatrist Nasim Kalhor, D.P.M., on November 29, 2016, which revealed a "deep foreign body, needle down to the bone." (AR 519.)

On January 10, 2017, Plaintiff underwent wound debridement. In July 2017, after postponements in January and March, Plaintiff underwent surgical needle removal. (AR 518, 1200, 1206.)

In November 2017, Plaintiff visited Thomas Neuman, D.P.M., in connection with an ulcer on her left foot. (AR 596.) Dr. Neuman noted Plaintiff's post-operative course was complicated by the development of a wound at the surgical site. Examination of Plaintiff's foot revealed ulceration extended through skin and resulted in a diagnosis of "non-pressure chronic ulcer of other part of left foot with fat layer exposed." (AR 598.)

In April 2018, the ulcer had gotten smaller but was not completely healed. (AR 602-603.) On June 28, 2018, Plaintiff complained of chronic swelling and pain in her left foot, and wound oozing on her second toe. (AR 1211.) During this visit, Plaintiff received a Toradol injection in her foot. (AR 1212.)

In January 2019, Ramon Medina, P.A., noted Plaintiff's wound had healed. (AR 1206.) In September 2019, Plaintiff complained about localized pain on her 2nd and 3rd toes on her left foot and decreased sensation. (AR 131-132.)

## II. The ALJ's Residual Functional Capacity Assessment is Supported by Substantial Evidence.

Plaintiff contends the ALJ erred in finding that she has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b). (ECF 20 at 5-7.) Plaintiff argues the ALJ's RFC fails to consider the effect of her combined impairments on her ability to perform prolonged standing and walking. (ECF 20 at 5.) Specifically, Plaintiff contends that the ALJ did not properly evaluate her osteoarthritic right hip and chronic left foot pain. (ECF 20 at 5.) According to Plaintiff, the ALJ erred when she relied on the Consultative Examiner's opinion that Plaintiff could stand and walk 6 hours a day. (*Id.* at 6.) For the following reasons, the Court disagrees and concludes that the ALJ's RFC determination is supported by substantial evidence.

### Left Hip and Right Foot Impairment

In making the RFC assessment, the ALJ found the Plaintiff has the following severe impairments: osteoarthritis right hip; plantar fasciitis, and neuroma post right foot surgery; chronic obstructive pulmonary disease (COPD); obstructive sleep apnea (OSA); hypertension; and obesity. (AR 192.) The ALJ also stated that she considered the combined effect of each Plaintiff's impairments. The ALJ relied upon the findings and opinion of the consulting physician Dr. Rostamloo in making the RFC determination. (AR 194-196.) Dr. Rostamloo examined Plaintiff in April 2016. (AR 502-507.) Dr. Rostamloo's report reflects the following findings: (1) an x-ray of Plaintiff's hip revealed only "mild to moderate degenerative disease"; (2) the observation was made that Plaintiff exhibited normal "gait and balance" with some limitation in hip; and (3) Plaintiff did not require use of ambulatory devices; and (4) apart from right hip, Plaintiff's lower extremities were normal. (AR 194, citing AR 503-505.) The ALJ pointed to Dr. Rostamloo's finding that, besides mild obesity,

Plaintiff's clinical presentation was normal. (AR 194, citing AR 505.) Dr. Rostamloo opined that Plaintiff was able to stand/walk for six hours in an eight-hour day. (AR 264-265.)[2]

After Dr. Rostamloo's examination, Plaintiff saw a podiatrist for foot and heel pain and was diagnosed with plantar fasciitis and neuroma. (AR 194, citing AR 522.) Plaintiff underwent x-rays of her left ankle in May 2016. (AR 460.) Besides signs of swelling (edema), x-rays of the left ankle were "unremarkable." (*Id.*) Follow-up x-rays of Plaintiff's toes a month later were similarly unremarkable with no indication of fracture or significant joint space disease. (AR 459.) After Plaintiff continued to have left foot pain and swelling, further examinations revealed an embedded foreign body ("a needle down to the bone"). (AR 519.) On September 7, 2016, Plaintiff underwent wound debridement and in January 2017, Plaintiff underwent surgical needle removal. (AR 518, 1200, 1206.)

Plaintiff contends the ALJ should not have relied on Dr. Rostamloo's opinion because that opinion was reached before her left foot problem arose. (ECF 20 at 6.) However, the ALJ did not rely solely on Dr. Rostamloo's opinion. The ALJ also relied on the State Agency physician's opinion that was rendered after Plaintiff's foot injury and specifically considered that injury. (AR 264-274.) Further, Plaintiff does not offer contemporaneous medical evidence that her foot injury required a more restrictive RFC determination. (ECF 20 at 5-7.) Because the record contains no conflicting medical opinion, the ALJ was entitled to defer to the State Agency physician's opinion on Plaintiff's walking/standing limitation as substantial evidence supporting her decision. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of non-examining physician "may constitute substantial evidence

---

[2] The relevant pages from Dr. Rostamloo's report are missing from the AR. Nevertheless, the State Agency physicians referred to the report as including the six-hour standing/walking limitation (*see* AR 264-265), and the parties do not dispute that Dr. Rostamloo offered that opinion. (*See* ECF 20 at 6 n.4; ECF 23 at 3-4 n.1).

when it is consistent with other independent evidence in the record"); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (same).

Plaintiff also contends that the ALJ did not factor in her left foot impairment in rendering her RFC determination. (ECF 20 at 6-7, citing AR 269.) The medical record reflects that Plaintiff developed an open ulcer after her July 2017 left foot surgery. (AR 596, 598, 603.) The ALJ acknowledged this evidence, explaining that "[a]lthough the post-operative course was evidently complicated somewhat by the development of a wound at the surgical site, updated medical records show the wound healed." (AR 195, citing AR 600, 1206.) The ALJ's finding is consistent with notes from a January 2019 treatment visit, which reported that Plaintiff "is not currently seeing podiatrist as foot wound healed." (AR 1206.)

Plaintiff further points to 2019-2020 medical records in support of her claim that she is limited by her persistent foot pain. (ECF 20 at 5, citing AR 131-132.) Yet this claim is based on a report of her subjective complaint of "severe left foot pain." (AR 131.) As discussed below, the ALJ's discounting of Plaintiff's subjective symptoms was proper, and the ALJ was not required to include limitations in the RFC based on those subjective complaints.

Finally, Plaintiff contends that new and material evidence shows her providers requested approval for a total hip replacement and that this new evidence requires a more restrictive RFC determination. (ECF 20 at 5, citing AR 81.) Plaintiff fails to expand on this theory and does not cite any relevant authority. Further, the additional evidence is from medical visits after the date of the ALJ's decision, and the Appeals Council properly found that they did not relate to the period at issue. (AR 2, 5.) Thus, it does not impact the decision on whether Plaintiff was disabled during that period. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (disability must be proven by contemporaneous medical records).

### III. The ALJ Properly Discounted Plaintiff's Subjective Limitations.

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for discounting her subjective allegations of pain. (ECF 20 at 8-12.)

#### A. <u>Relevant Law</u>

Where, as here, a claimant has presented evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms ... and determine the extent to which [those] symptoms limit his ... ability to perform work-related activities ...." SSR 16-3p, 2016 WL 1119029, at *4. Absent a finding that the claimant is malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include: (1) objective medical evidence; (2) the claimant's treatment history; (3) the claimant's daily activities; (4) unexplained failure to pursue or follow treatment; and (5) inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012). So long as the ALJ's credibility finding is supported by substantial evidence in the record, a court

may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

### B. Plaintiff's Subjective Limitations

At the hearing, Plaintiff testified that she stopped cleaning houses in about September 2015 because of breathing issues from COPD. (AR 229.) Plaintiff stated her COPD causes exhaustion and makes it difficult for her to walk. (*Id.*) Plaintiff's cleaning took her longer (6 hours per house) because of her breathing. (AR 230-231.) Plaintiff's primary doctor referred her to a lung specialist, Dr. Ahmed. (AR 234.) Plaintiff explained that she had not seen Dr. Ahmed in a year and a half due to change in insurance. (*Id.*)

Plaintiff also claims to be unable to work because of hip problems. (AR 234-238.) She testified that she is in so much pain that she is unable to put on her shoes. (AR 235.) She testified that she needs a hip replacement; however, her doctor refused to approve the surgery because of her obesity and breathing problems. (*Id.*) Plaintiff's doctor required her to lose weight and gain approval from a lung specialist before permitting surgery. (*Id.*) Plaintiff stated she has trouble losing weight because of her inability to exercise. (*Id.*)

Plaintiff testified that she limps when she walks and cannot feel the toes on her left foot. (AR 238.) She said her lungs feel overexerted when she walks. (AR 239.) She had surgery on her left foot after stepping on a needle, but the pain has not subsided. (AR 238.) She feels like "pins going through her feet" when she touches the affected area and has problems with the wound. (*Id.*) She is only able to walk 20 feet and stand for fifteen minutes due to exhaustion from her lungs and pain in her legs. (AR 239, 243.) She experiences numbness in her hands and has difficulty reaching above her shoulder level. (AR 246.)

On an average day, Plaintiff makes breakfast, cleans her room, and takes her dogs outside. (AR 241.) She drives to the grocery store, parks in a handicap spot, and uses a shopping cart to walk around the store. (*Id.*) She tried to use a cane to aid her

walking, but it did not feel right. (AR 244.) She quit smoking around September or October 2020 but does not use a CPAP titration machine for her COPD. (AR 246-247.) Plaintiff was referred to a urologist for stress incontinence but did not see one because she was unaware of what a urologist is. (AR 244.) Her incontinence occurs primarily at night, but occasionally during the day (for example when she coughs). (AR 244-245.)

### C. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff alleged, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 194.) The ALJ's decision sets out a number of reasons for this determination.

(1) Lack of Objective Medical Evidence

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ noted that while the record shows that Plaintiff has a history of COPD and OSA, the medical evidence "indicates neither impairment is especially severe nor limiting." (AR 194, 192-196.) In particular, the ALJ referred to a pulmonary function test in 2015 that showed findings consistent with "moderate" obstructive airway disease, and a contemporaneous sleep study showed evidence of OSA with hypoxemia. (*Id.*) Although Plaintiff had two exacerbations during that time – one in July 2016 and another in August 2017 – these were acute episodes in the context of ongoing cigarette use. (AR 194, citing AR 828, 910, 952-953.) The ALJ found that the medical record is notable for the absence of chronic respiratory problems. (AR 194.) Also, the ALJ noted Dr. Ahmed's observations that, despite continuing to smoke, Plaintiff was "pulmonary wise doing fine" with no "significant shortness of breath"

at follow-up visits in September 2016, November 2016, March 2017, and September 2017. (*Id.*) In addition, a chest x-ray during that period revealed clear lungs and showed "no acute cardiopulmonary abnormality," and that updated records show "no wheezing" or "shortness of breath with exertion." (*Id.*)

The ALJ also found that the medical evidence "generally fails to support the claimant's allegations of disabling musculoskeletal pain during the period at issue." (*Id.*) The longitudinal record revealed evidence of some cervical degenerative disease in 2014, before the application date. (*Id.*) However, Plaintiff did not mention neck pain in connection with this application or during her testimony at the hearing. (*Id.*) Also, the ALJ noted that a recent August 2015 x-ray of Plaintiff's pelvis, sacroiliac joints and lumbosacral spine reveal only "mild" abnormalities. (*Id.*)

In addition, the ALJ stated that Plaintiff did not exhibit any "serious clinical defects" upon the comprehensive physical examination administered by Dr. Rostamloo. (AR 194, 502-507.) The ALJ found convincing the following findings of Dr. Rostamloo: (1) plaintiff exhibited "normal" gait and balance; (2) she did not require use of assistive device for ambulation; (3) her lungs were clear to auscultation; and (4) apart from her right hip, plaintiff's lower extremities were normal. (AR 194-195, citing AR 502-507.) Additionally, the ALJ found that an x-ray of Plaintiff's only "mild to moderate degenerative disease." (AR 194, citing AR 504.) Further, she noted the remainder of Plaintiff's objective medical inspection was "essentially normal except for obesity." (*Id.*)

Accordingly, the ALJ properly concluded that Plaintiff's subjective complaints are not fully supported by objective medical evidence, and this was a valid factor for the ALJ to consider in discounting those complaints.

(2) <u>Inconsistencies in Plaintiff's Treatment</u>

An ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in assessing a claimant's credibility. *Molina,* 674 F.3d at 1113 (citation omitted). Where "a

claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638.

Here, the ALJ found inconsistencies in Plaintiff's medical treatment that undermined her subjective complaints of pain. The ALJ highlighted Plaintiff's failures to complete a recommended CPAP titration study over a two-year period. (AR 194, citing AR 529, 532, 535, 538.) At the hearing, Plaintiff testified that she failed to obtain a CPAP machine following her physician's recommendation. (AR 246.) As set forth above, substantial evidence supports the ALJ's finding that Plaintiff failed to follow prescribed treatment. *See, e.g., Tonise v. Colvin*, 2015 WL 5286048, at *3 (C.D. Cal. Sept. 9, 2015) (ALJ properly found plaintiff not credible because "while she complained of disabling pain and numbness due to her diabetes, the record showed that Plaintiff had repeatedly failed to follow her prescribed diabetic treatment regimen").

The ALJ also found that a significant gap in treatment visits between June 2018 and June 2019 indicated Plaintiff's right hip pain was not as serious as alleged. (AR 195, citing AR 1206, 1210.) The ALJ pointed out that the medical record revealed Plaintiff "never followed up" on an old referral to see an orthopedist, Dr. Nussbaum. (AR 195, citing AR 1217.) Plaintiff's failure to follow-up with Dr. Nussbaum does not align with her allegations of debilitating hip pain. (AR 235.)

In light of this evidence, the ALJ properly relied on inconsistent treatment as a ground to discount Plaintiff's subjective complaints.

(3) <u>Absence of Ambulatory Assistive Devices</u>

After reviewing the medical record, the ALJ found that the absence of ambulatory assistive devices (such as a cane or mobile scooter) was inconsistent with what would be reasonably expected given Plaintiff's allegations of disability. (AR 195, 241-242.) Plaintiff testified that she had used a cane in the past but quit because she had a hard time walking with it. (AR 241.) Plaintiff also testified that she would

be unable to go grocery shopping without a grocery store cart to lean on. (*Id.*) Based on Plaintiff's purported standing limitation (15 minutes), it is reasonable to assume she would rely on more supportive devices for mobility than a grocery cart. (AR 241-242.) Plaintiff's testimony describing her debilitating right hip pain ("I can't even put my own shoes on" (AR 235)) also conflicts with the absence of prescribed ambulatory devices in the medical record. Based on these inconsistencies, the ALJ properly relied on the lack of ambulatory assistive devices in the medical record to discount Plaintiff's subjective complaints. *See Verduzco v. Apfel*, 188 F.3d 1087 (9th Cir. 1999) (inconsistency between claimant's purported reliance on a cane at hearing and his doctor's notation that he didn't require one, was clear and convincing evidence to discredit his testimony).

(4) Plaintiff's Work History

A poor work history before the alleged disability period may be a legitimate basis for discounting a claimant's subjective symptom claims because it suggests a propensity to avoid work. *See Thomas v. Barnhart*, 278 F.3d 948, 959 (9th Cir. 2002) (ALJ gave clear and convincing reasons for credibility determination, including relying on "extremely poor work history" even before she claimed disability which "negatively affected her credibility regarding her inability to work"); *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 821-822 (C.D. Cal. 2007) (ALJ found that "plaintiff has never worked, which raises some questions as to whether his current unemployment is truly the result of his medical problems.").

In this case, the ALJ found that Plaintiff's lack of a work record undermined her subjective complaints. (AR 195-196.) Although Plaintiff claims she stopped working in December 2013 for medical reasons, the record shows no earnings since 2006. (AR 367.) Plaintiff's earnings were zero in 2003 through 2018 with the following exceptions: In 2004, she earned $6,848, in 2005, she earned $4,370, and in 2010, she earned $20. At the hearing, Plaintiff's counsel also maintained that Plaintiff had no past relevant work and no history of substantial gainful activity in the past 15

years. (AR 225). The ALJ found that the absence of a work history for the past 15 years suggested Plaintiff's current unemployment was due to non-medical reasons. (AR 195-196.)

On the other hand, the ALJ also noted Plaintiff's testimony that she did some work until September 2015, a year after the alleged disability date. (AR 229-230.) Plaintiff acknowledged doing housekeeping on a part-time basis, which involved vacuuming and scrubbing floors. (AR 230.) The ALJ found that although Plaintiff's work was part-time and not considered substantial gainful activity, it conflicted with the severe limitations she alleged. (AR 196.) This was also a valid reason for discounting Plaintiff's subjective symptom testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.").

(5) Failure to Use Prescription Pain Medication

The ALJ found that Plaintiff's non-use of prescribed pain medication conflicted with her allegations of disabling pain. (AR 195.) As the ALJ pointed out, the medical record from 2016 — two years after the alleged onset of disability — shows Plaintiff did not use pain medication. (AR 195, citing AR 502.) The ALJ also noted that the updated medical record from March 2018 shows "continued non-use of pain medication." (AR 195, citing AR 1217.) While Dr. Medina's treatment notes state that "patient was out of meds," Dr. Medina also wrote "NEVER SCHED HER F/U APPT OR PRESCRIBED HER PAIN MEDS?" (AR 1217.)

Plaintiff contends that the ALJ mischaracterized Plaintiff's pain medication history by failing to cite instances of prescribed pain the medical record. (ECF 20 at 9-10.) In this regard, Plaintiff is correct that portions of the record are unclear. (ECF 20 at 10.) It is true that the medical record shows that Plaintiff was prescribed the narcotic Norco. (AR 391, 452, 901, 952, 1098, 1181, 1182, 1224, 1227, 1230, 1233,

1236.) However, even if the ALJ erred regarding Plaintiff's use of pain medications, the ALJ provided several other valid bases for discrediting Plaintiff's subjective symptom testimony (as discussed above), and any error was harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid basis for credibility determination).

## ORDER

IT IS THEREFORE ORDERED that Judgment shall be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 10/25/2021

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　ALEXANDER F. MacKINNON
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE